EXPRESS WELDING, INC., a Michigan
corporation,

Case No. 2:08-cv-12478

       Plaintiff,

HONORABLE STEPHEN J. MURPHY, III

v.

SUPERIOR TRAILERS, LLC, a Michigan
corporation, et al.,

       Defendants.

                           /

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT (Docket no. 30)

This is a suit by Express Welding, Inc., a manufacturer of semi-tractor trailers, against Superior Trailers, LLC ("Superior Trailers"), B&B Specialized Sales & Services LLC ("B&B") and Robert Becker, an agent for Superior Trailers and B&B. The suit claims that defendants contracted with another company to manufacture plaintiff's trailer products and are knowingly passing off plaintiff's products as defendants' products. The complaint asserts claims for trademark infringement under state and federal statutes and Michigan common law, unfair competition and tortious interference with business relationship under Michigan common law.

Plaintiff now moves for partial summary judgment on its infringement and unfair competition claims. For the reasons stated below, plaintiff's motion will be granted in part and denied in part. Specifically, the Court finds the plaintiff's marks are valid and protectable and finds that the alleged use of the marks by the defendants creates a likelihood of confusion. The Court also finds that the plaintiff has established that the defendants have actually infringed the EXPRESS and NITRO STINGER trademarks. The Court finds, however, that the defendants have met their burden on summary judgment of

demonstrating a genuine issue of material fact as to whether the defendants used the NITRO SPREADER mark in commerce, and the Court therefore denies summary judgment of infringement as to defendants' use of the plaintiff's NITRO SPREADER trademark.

**FACTS**

The plaintiff, Express Welding, Inc. ("Express Welding") is the owner of the NITRO STINGER, EXPRESS and NITRO SPREADER trademarks. It has used the EXPRESS trademark to identify its services since 1988, the NITRO STINGER trademark to identify its goods since 2005, and the NITRO SPREADER trademark to identify its goods since 2006.

The plaintiff entered into an agreement with defendant Robert Becker in 2006 under which the defendants would sell plaintiff's NITRO STINGER and NITRO SPREADER trailer products. This relationship was terminated in 2007, but the plaintiff claims that Becker engaged another company to manufacture the plaintiff's trailer products. Plaintiff also claims that defendants are selling plaintiff's products as defendants' products and are generally misrepresenting the identity of both plaintiff's and defendants' products on the web and in advertising.

In support of its motion for summary judgment, plaintiff has submitted a declaration by Jeffrey Scheuren, the Chief Engineer for Express Welding. The Scheuren declaration states that the defendants continue to sell trailer products under Express Welding's trademarks. In support of this statement, the plaintiff attaches a page from defendants' website, [www.RBeckerTrailers.com,](www.RBeckerTrailers.com) which states that it is the "Home of the original "Superior Nitro Stinger" and Superior Nitro Spreader." The plaintiff also submits pages from several other websites, [www.rockanddirt.com,](www.rockanddirt.com) [www.quereltrailers.com,](www.quereltrailers.com) [www.TMTTrailerSales.com,](www.TMTTrailerSales.com) and [www.SemiTrailers.net](www.SemiTrailers.net). which allegedly associate Express

2

Welding's marks with the defendants' trailer products. The plaintiff has also submitted pictures of instructional stickers on trailer attachments that refer to "Superior Trailers Nitro Stinger." The plaintiff has also attested to a single incident of customer confusion, in which a customer, Dave Harkema, called Scheuren and asked whether Express Welding was the manufacturer of the "Superior Stinger" because he was looking for parts. Finally, the plaintiff has submitted an advertisement for Superior Trailers which advertises "New Superior Trailer Nitro Stinger Attachments Formally (sic) Express."

The plaintiff is seeking a declaration that the defendants are liable to the plaintiff for federal trademark infringement under 15 U.S.C. § 1114; a declaration that the defendants are liable to the plaintiff for federal unfair competition under 15 U.S.C. § 1125(a); a determination that the defendants are liable to the plaintiff for trademark infringement under M.C.L. § 429.42; a determination that the defendants are liable to the plaintiff for trademark infringement under Michigan common law; a determination that the defendants are liable to the plaintiff for tortious interference with business relationships; a determination that the defendants' conduct has been wilful and deliberate; treble damages; attorneys fees; and an injunction barring the defendants from use of the trademarks and requiring the defendants deliver for destruction all infringing products.

The Federal Registrations

Express holds a federal trademark registration for the following trademarks:

1) EXPRESS, Reg. No. 3,452,924, registered June 24, 2008, registered for "custom manufacture of trailers and trailer accessories":



2) NITRO STINGER, Reg. No. 3,444,695, registered June 10, 2008 for "semi-tractor trailers":



and 3) NITRO SPREADER, Reg. No. 3,504,645, registered September 23, 2008 for "semi-tractor trailers";



## LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St.*

*Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435-36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *see Celotex*, 477 U.S. at 322-23; *Matsushita*, 475 U.S. at 586-87.

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir.1995).

**ANALYSIS**

I.  HAS EXPRESS MET ITS BURDEN OF SHOWING LIKELIHOOD OF CONFUSION?

Express seeks summary judgment of infringement on its claims that the defendants are in violation of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a).  In addition, Express Welding seeks summary judgment on its claims that the defendants are in violation of Michigan law on trademark and unfair trade practices. The Court applies the same standard for all claims.  *See Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 833 (6th Cir. 1983); *Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 604 (6th Cir. 1991).

To obtain summary judgment on its trademark infringement and unfair competition claims, the plaintiff must establish as a matter of law that the defendants' use of its marks creates a likelihood of confusion regarding the origin of the goods or services offered by the defendants. *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 630 (6th Cir. 2002). The standard for finding infringement was articulated by the Sixth Circuit in *Frisch's Restaurants v. Elby's Big Boy, Inc.*, 670 F.2d 642 (6th Cir. 1982).  The court there held that to obtain equitable relief under Section 43(a) of the Lanham Act, all the plaintiff need to show is a "likelihood of confusion."  To recover damages, however, a plaintiff must show ***actual*** confusion. *Id.* at 647.  Further, to obtain equitable relief, the plaintiff need not show

6

intentional conduct; "a mere showing that advertisements tend to create a false impression is sufficient to warrant injunctive relief." *Id.*

The *Frisch's* court held that a court addressing an infringement claim must consider the following eight factors ("*Frisch's* factors") in determining whether there is a likelihood of confusion: 1) the strength of the plaintiff's mark; 2) relatedness of the goods; 3) similarity of the marks; 4) any evidence of actual confusion; 5) the marketing channels used; 6) the likely degree of purchaser care; 7) defendant's intent in selecting the mark; and 8) the likelihood of expansion of the product lines. *Id.* at 648. Not all these factors are relevant in every case, and the ultimate question remains whether confusion is likely in the marketplace as a result of the alleged infringement. *Therma-Scan*, 295 F.3d at 630. The factors "imply no mathematical precision," but are a guide to determine whether confusion is likely and must be evaluated in every case. *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991). In applying these factors on summary judgment, when the likelihood of confusion is the dispositive issue, the nonmoving party must establish that there are genuine factual issues concerning the existence of the relevant *Frisch's* factors, when viewed in the light most favorable to the nonmoving party. *Id.*

Applying the *Frisch* Factors to the present case, the Court finds that the plaintiff has met its burden of showing the absence of material issue of fact regarding a likelihood of confusion, sufficient to justify injunctive relief.

1. *Strength of Marks*

The first factor is the strength of the plaintiff's marks. This factor "focuses on the distinctiveness of a mark and its recognition among the public." *Therma-Scan, Inc.*, 295 F.3d at 631. The strength of a mark is generally the result of (1) its unique nature; (2) its

7

owner's intensive advertising efforts; and (3) which of the four categories the mark occupies: generic, descriptive, suggestive or arbitrary/fanciful. *Id.* There is little evidence in the record regarding the marks' recognition among the public or the owner's advertising efforts, so the following discussion focuses on the distinctiveness of the marks.

The plaintiff argues that the marks NITRO STINGER and NITRO SPREADER are arbitrary, which is the strongest category of marks. The defendants argue, on the other hand, that the plaintiff's marks are merely descriptive. The defendants argue that "stinger" is a common expression for a semitrailer, that "spreader" is a common expression for a spreader bar that spreads the weight of the trailer, and that "nitro" is an abbreviation for the chemical element nitrogen. Therefore, the defendant argues, "Nitro Stinger" and "Nitro Spreader" merely describes a feature or characteristic of plaintiff's product, a nitrogen powered semitrailer.

Defendants' argument, which requires breaking down the marks into individual words and evaluating them in isolation, is unpersuasive because the Sixth Circuit has held that the validity and distinctiveness of a composite trademark is to be determined by looking at the trademark as a whole, rather than breaking it into its composite parts. *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 795 (6th Cir. 2004). In *AutoZone*, the Sixth Circuit held that extensive third party use of the term "ZONE" did not sap the strength of the "AUTOZONE" mark where there was no evidence of pervasive use of the composite mark as a whole. *Id.* Thus, the NITRO STINGER and NITRO SPREADER marks must be evaluated a whole for validity and distinctiveness.

Applying this first *Frisch's* factor, the Court finds that the plaintiff's NITRO STINGER and NITRO SPREADER marks are reasonably strong, falling closest to the suggestive category, rather than to the generic or descriptive end of the spectrum suggested by the

defendant.     A suggestive term "'suggests rather than describes an ingredient or characteristic of the goods and requires the observer or listener to use imagination and perception to determine the nature of the goods.'"  *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1117 (6th Cir. 1996) (*quoting Induct-O-Matic Corp. v. Inductotherm Corp.*, 747 F.2d 358, 362 (6th Cir. 1984)).  A suggestive term is stronger than one that is merely descriptive and does not require proof of secondary meaning.  *Champions Golf Club*, 78 F.3d at 1117.  The terms "nitro stinger" and "nitro spreader" do not immediately suggest trailers and features of trailers.  While the defendant has introduced some evidence suggesting that the component parts "nitro," "stinger" and "spreader" have been used by third-parties to denote trailer attachments, there is no evidence of extensive third-party use, and the defendants have introduced no evidence that the composite marks as a whole have been used by anyone other than the plaintiff and the defendant to signify the trailers and accessories as used here.  This factor therefore favors a finding of a likelihood of confusion.

2.  *Relatedness of the Goods*

The goods in question are the same  -- semitrailers -- and the parties are in agreement that there is no factual issues as to this factor, which favors a finding of likelihood of confusion.

3.  *Similarity of the Marks*

The plaintiff argues that the marks are identical.  The defendants argue that the marks are not identical, because the plaintiff's marks are NITRO STINGER and NITRO SPREADER, while the defendants used "Superior Trailers Nitro Stinger" and "Superior Trailers Nitro Spreader."  Defendants argue that customers looking at defendants' products will focus on the words "Superior" or "Superior Trailer" and will not be confused.

9

The Court finds that the marks are identical. The fact that the defendants put their own company name before the plaintiff's registered marks does not alter the fact that the plaintiff's marks are used in their entirety, including in most cases the distinctive font characteristics and graphic elements of the registered marks, which are reproduced above. This factor also favors a likelihood of confusion.

4.  *Evidence of Actual Confusion*

Evidence of actual confusion is the best evidence of likelihood of confusion. *Therma-Scan*, 295 F.3d at 634. There is a single instance of actual confusion in the record. According to the Scheuren declaration, one customer called and asked if Express Welding could provide it with parts to repair their Superior Trailers trailer attachment. The defendants cite *Champions Golf Club*, 78 F.3d at 1120, for the proposition that one or two incidents of confusion is not a substantial evidence of actual confusion. In response, the plaintiff argues that to obtain equitable relief, they need not demonstrate actual confusion but only the likelihood of confusion. *See Frisch's*, 670 F.2d at 647.

While there is only a single incident of actual confusion in the record, that is some evidence of actual confusion. *See Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 284-84 (6th Cir. 1997) (any evidence of actual confusion weighs in plaintiff's favor). This factor therefore weakly favors a finding of likelihood of confusion.

5.  *Marketing Channels Used*

There is no genuine issue as to marketing channels used. Both the defendants and plaintiff sell their trailers through the same dealer network. This factor, therefore, supports a finding of a likelihood of confusion.

6. *Likely Degree of Purchaser Care*

The sixth *Frisch's* factor, the likely degree of purchaser care, is the weakest part of plaintiff's assertion of likelihood of confusion. The trailers in question are expensive, and the purchasers of expensive products are likely to exercise a high degree of care. *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 519 (6th Cir. 2007). This factor counsels against a finding of likelihood of confusion. On the other hand, when marks are sufficiently similar, a court may find a likelihood of confusion even where a customer is extremely careful and knowledgeable. *Id.* As discussed above, the marks at issue are identical and the plaintiff has been able to introduce evidence that at least one of its customers was actually confused as to the source of the manufacture of defendant's trailers. This factor therefore weighs slightly against a finding of likelihood of confusion, but the Court will accord less weight to this factor in this case. *See Induct-O-Matic*, 747 F.2d at 364-65 (expertise of purchasers does not always assure the absence of confusion).

7. *Defendant's Intent in Selecting the Mark*

The evidence in the record shows clearly that the defendants were aware that the plaintiff first used the marks in question in commerce and suggests that the defendants continued to use the plaintiff's marks following termination of an agreement between the parties regarding the sale of the plaintiff's trailer products. The defendants argues that they lacked the intent to cause confusion because (1) they did not know until they were sued for infringement that plaintiff claimed ownership of the NITRO STINGER and NITRO SPREADER marks; and (2) the only mark they used on the products themselves was the NITRO STINGER mark, and they claim that this use was only during the pendency of the parties' agreement.

Looking at the evidence in the record in the light most favorable to the defendants, as the Court must in considering the pending motion for summary judgment, the Court finds that there is not undisputed evidence that the defendants chose to use the mark with the intent of causing confusion. This factor is therefore neutral in the present posture of the case.

8. *Likelihood of Expansion of the Product Lines*

The final *Frisch's* factor is the likelihood of expansion of product lines. The parties agree that this factor is not relevant here.

Weighing the factors discussed above, the Court holds that defendants' use of plaintiff's registered marks in the present case creates, as a matter of law, a likelihood of confusion. Of the eight factors discussed above, five favor a finding of confusion, one suggests a finding of no likelihood of confusion, one is neutral, and one is not relevant. The factors favoring a finding of likelihood of confusion are strong, particularly the strength of the mark, the relatedness of the goods, the similarity of marks, and the marketing channels used. The one factor favoring a finding of no likelihood of confusion, the likely degree of purchaser care, is weakened by the similarity of the marks, the relatedness of the goods, and the evidence, albeit small, of actual confusion.

Viewing the evidence in the light most favorable to the nonmoving party, the Court holds that the defendants have failed to meet their burden of coming forward with evidence showing a genuine issue of fact for trial on the issue of likelihood of confusion. On this record, the Court finds a likelihood of confusion as a matter of law..

II.   DEFENDANTS' USE OF PLAINTIFF'S MARKS

The defendants argues that summary judgment of infringement is not appropriate because, they argue, the plaintiff has not established that the defendant has actually used

the plaintiff's marks in commerce, an essential element of a trademark infringement claim.

Defendants rely upon the affidavit of Robert Becker ("Becker Decl."),[1] in which Becker

attests in relevant part that defendant B&B advertised "this new trailer" (presumably a trailer

manufactured by the defendant) as "SUPERIOR TRAILER NITRO STINGER." Becker

Decl. ¶ 11. Becker also avers that defendant Superior Trailers, LLC placed an

advertisement in Rock & Dirt magazine using the mark "SUPERIOR TRAILER NITRO

STINGER," which advertisement included the phrase "New Superior Trailer Nitro Stinger

Attachments Formally Express." Becker Decl. ¶ 12. Becker states that none of the

defendants placed any other advertisements using the term "nitro stinger" or "nitro

spreader," and none of the defendants "sold any products in connection with the

SUPERIOR NITRO STINGER, SUPERIOR TRAILERS NITRO STINGER, or SUPERIOR

NITRO SPREADER terms and/or trademarks." Becker Decl. ¶¶ 13-14. Finally, Becker

states that the defendants ceased all commercial use of the terms "NITRO STINGER" and

"EXPRESS" in connection with trailers shortly after receiving a cease and desist letter from

the plaintiff. Becker Decl. ¶¶ 16-17.[2]

The plaintiff has also submitted interrogatories answered by defendant B&B. See

Exhibit D to Motion for Summary Judgment of Infringement. In these answers, B&B asserts

that the only trailers it sold bearing the NITRO STINGER mark were trailers manufactured

by the plaintiff and sold by B&B pursuant to an agreement with the plaintiff. B&B further

states in its answers to interrogatories that once the agreement was terminated, B&B

---

[1]The Becker declaration was initially submitted without a signature. The Court noted this at the hearing held on plaintiff's motion on August 11, 2009 and granted the defendants leave to file an amended declaration, which they did on August 18, 2009.

[2]Becker also asserts that he developed and created the name NITRO STINGER for the trailers and component parts and the defendants believed that they were the owners of the NITRO STINGER mark. Neither of these arguments undercuts a finding of infringement.

ceased selling any products bearing the NITRO STINGER mark and at no time did B&B sell any products bearing the EXPRESS or NITRO SPREADER trademarks.

The Court finds that the defendants submissions establish a genuine issue of material fact on the issue of use of plaintiff's mark concerning the use of the plaintiff's NITRO SPREADER trademark, but not as to the use of the plaintiff's NITRO STINGER or EXPRESS trademarks. As to these later two, the Becker declaration concedes that the NITRO STINGER mark was used in advertising the defendants' trailer rather than plaintiff's trailer, and both the NITRO STINGER and EXPRESS marks were used at least once, in the Rock and Dirt magazine advertisement. Thus, on these undisputed facts, the defendants have infringed the NITRO STINGER and EXPRESS trademarks.

As to the NITRO SPREADER trademark, the declaration of defendant Becker, made subject to the penalties for perjury, states that the defendants never sold any products "in connection with" the NITRO SPREADER mark. Becker Decl. ¶ 13-14 (stating that none of the defendants "sold any products in connection with the SUPERIOR NITRO STINGER, SUPERIOR TRAILERS NITRO STINGER, or SUPERIOR NITRO SPREADER terms and/or trademarks.") Furthermore, B&B's interrogatory answers state affirmatively that B&B never sold any products bearing either the EXPRESS or NITRO SPREADER trademarks. Exhibit D, Interrogatory Answer No. 7.[3]

The plaintiff has submitted substantial and persuasive evidence that contradicts the defendants' sworn assertion that they never used the NITRO SPREADER or SUPERIOR NITRO SPREADER mark in association with their own products. This evidence includes,

---

[3]The Becker declaration is somewhat ambiguous in this regard, and the Court is construing the statements therein in the light most favorable to the defendants. Without reaching a conclusion, the Court notes that Rule 11 may apply in this instance if the Becker declaration turns out to be misleading and that defendants did use the mark "Nitro Spreader" or "Superior Trailers Nitro Spreader" on or in connection with their own products.

in particular, the printout from www.rbeckertrailers.com, a website that is owned by defendant Becker, which states that defendant B&B is "Home of the original "Superior Nitro Stinger" and the original "Superior Nitro Spreader," as well as evidence that plaintiff's NITRO SPREADER mark was affixed to defendants' products.  On summary judgment, however, the Court may not weigh the evidence, but rather is confined to determining whether evidence exists, and must construe all facts in the record and all inferences to be drawn from such facts in the light most favorable to the nonmoving party.  Here, the defendants have met, albeit barely, their burden of coming forward with evidence showing the existence of material factual issues as to defendants' use of the NITRO SPREADER mark.  The Court will therefore deny summary judgment of infringement as to that mark.

III.    VALIDITY OF PLAINTIFF'S MARKS

The defendants assert that the plaintiff's marks are not protectable because they are merely descriptive.  Only trademarks that are "distinctive" are accorded trademark protection. *Leelanau Wine Cellars.*, 502 F.3d at 515.  A descriptive term or mark describes a characteristic or ingredient of an article and, unlike distinctive marks, only enjoy protection if they develop a "secondary meaning."  *Champions Golf Club*, 78 F.3d at 1117.  The defendants assert, as outlined above, that "nitro" is an abbreviation for nitrogen, that "stinger" is a term for a semitrailer and that "spreader" is a term for a bar that spreads the weight of the trailer.

The plaintiff has introduced evidence showing that the marks are validly registered. Registered marks enjoy a presumption of validity.  15 U.S.C. § 1057(b).  The defendants have not come forward with any evidence rebutting the valid registration of the marks or the presumption of validity.  Further, as discussed above, the Court finds that the marks fall on the suggestive end of the spectrum and as such do not require a showing of secondary

meaning in order to be enforceable. See *supra* section I(1). Defendants have failed to offer evidence to rebut the presumption of validity enjoyed by plaintiff's validly registered marks, and therefore have failed to meet their burden of opposing summary judgment on this basis.

IV.   FAIR USE DEFENSE REGARDING USE OF "EXPRESS" MARK

Defendants argue that the only alleged infringing use of the mark "EXPRESS" is a single advertisement in which the text advertises "New Superior Trailer Nitro Stinger Attachments Formally (sic) Express," which appeared in Rock and Dirt magazine. It is not clear from the record when or where this advertisement appeared. Plaintiff argues that the Court can find this advertisement to be unfair and infringing as a matter of law because it creates the impression that the defendants' trailers were formerly made by Express. Defendant argues that its use of "Express" in this instance constitutes nominative fair use. Nominative fair use is a defense to trademark infringement which has been recognized by the Ninth Circuit and occurs when a defendant uses the plaintiff's mark to describe the plaintiff's product rather than its own. *Bliss Clearing Niagara Inc. v. Midwest Brake Bond Co.*, 339 F. Supp. 2d 944, 963 (W.D. Mich. 2004). To prevail on the defense of fair use, a defendant must show that the plaintiff's product or service in question is not readily identifiable without the use of the trademark, only so much of the mark is used as is reasonably necessary to identify the plaintiff's product or service, and the user does not, in connection with the mark, suggest sponsorship or endorsement by the trademark holder. *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1153-55 (9th Cir. 2002).

The Sixth Circuit has declined to recognize the defense of nominative fair use. *See PACCAR, Inc. v. TeleScan Tech., LLC,* 319 F.3d 243, 256 (6th Cir. 2003) (abrogated on other grounds by *KP Permanent Make-Up, Inc. v. Lasting Impressions I, Inc.*, 543 U.S. 111

(2004)).  Even if the doctrine was recognized in this circuit, the defendants here have failed

to meet their burden of showing a genuine issue of material fact that their use of "Express"

is protected by nominative fair use, for two reasons.  First, the defendants concede in the

Becker declaration facts that establish that the term "Express" in the Rock and Dirt

advertisement was used to describe the defendant's product, not the plaintiff's product.

*See* Becker Decl. ¶ 12 (advertisement in Rock and Dirt was placed by defendant B&B and

used to advertise the "Superior Trailer Nitro Stinger").  Second, the fair use defense is

inapplicable because the use in the advertisement at issue suggests sponsorship or

endorsement by the trademark holder, by suggesting that the defendants' products were

"formerly" manufactured by Express.[4]  The defendants have failed to establish a fair use

defense in this case.

### CONCLUSION

The Court finds that the plaintiff has met its burden of establishing infringement as

a matter of law as to plaintiff's NITRO STINGER and EXPRESS marks, but have not as a

matter of law established infringing use of the NITRO SPREADER mark.  Plaintiff's motion

for partial summary judgment of infringement (docket no. 30) is **GRANTED IN PART AND

DENIED IN PART** as stated above.

**SO ORDERED.**

---

[4]Plaintiff argues that the defendants' affirmative defenses must be disregarded because they did not conduct "meaningful" discovery and only responded to the plaintiff's discovery requests in time to comply with the court's order to compel discovery.  The plaintiff hasn't cited authority or submitted any evidence in support of this point and the Court does not need to reach this argument given the Court's holding that the plaintiff is entitled to summary judgment.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: March 22, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 22, 2010, by electronic and/or ordinary mail.

Alissa Greer

Case Manager